UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>WICAHPE MILK,<br><br>　　　　　　　Defendant. | 5:16-CR-50149-JLV-03<br><br><br>REPORT AND RECOMMENDATION<br>REGARDING MOTION TO<br>SUPPRESS (DOC. 232) |

Pending is Defendant's Motion to Suppress (Doc. 232). A hearing was held on Wednesday, May 20, 2020. Defendant was personally present and represented by his attorney of record, Terry L. Pechota. The Government was represented by the Assistant United States Attorney Kathryn Rich. Three witnesses testified at the hearing, and two exhibits were received into evidence under seal. Supplemental briefing concluded on June 19, 2020. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be granted in part and denied in part.

## JURISDICTION

Defendant is charged in a Second Superseding Indictment with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); Prohibited Person in Possession of a Firearm in

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Obstruction of Justice in violation of 18 U.S.C. § 1503.  (Doc. 215).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## **FACTUAL BACKGROUND**

The defendant, Wicahpe Milk, and Brendon Janis both became under investigation for conspiracy to distribute methamphetamine.  (Doc. 257 at p. 5).  Although alleged to be co-conspirators, Mr. Milk and Mr. Janis were indicted separately.  Id. at p. 6.  Mr. Janis's trial was conducted in August of 2019.  Id.  Samuel O'Rourke was one of the individuals that testified at Mr. Janis's trial.  Id. at p. 7.  Mr. O'Rourke reported that he was experiencing intimidation from his role in testifying against Mr. Janis.  Id.  Mr. O'Rourke was an inmate at the Pennington County Jail, along with Mr. Milk and Mr. Janis.  Id.

Law enforcement interviewed Mr. O'Rourke, who reported that the night before he was scheduled to give testimony, several inmates, including "Chops", who is known to be Wicahpe Milk, approached Mr. O'Rourke and were trying to direct his testimony in the Janis trial.  Id. at p. 11, 50-51.  Mr. O'Rourke went on to further describe a later interaction where he was standing in his cell pod near a glass door, in which Mr. Milk was said to be on the other side of the glass.  Id. at p. 51.  Mr. O'Rourke explained that Mr. Milk showed him a piece of paper through the glass door with several names on it and alluded to those names as being witnesses in the Janis trial.  Id.

Mr. O'Rourke further explained that Mr. Milk directed him not to testify for the Government and that he would provide Mr. O'Rourke with further directions.  Id. at p. 51.  In the interview, Mr. O'Rourke recounted that later that same day, Mr. Milk again directed Mr. O'Rourke over to the glass door, where other inmates surrounded Mr. O'Rourke.  Id.  Mr. Milk then provided Mr. O'Rourke a letter directing Mr. O'Rourke how he should testify in the Janis trial.  Id.  Mr. O'Rourke provided that note to law enforcement, who made a copy of the note.  (Ex. 1).

Law enforcement obtained a copy of a security video from inside Pennington County Jail which depicts Mr. O'Rourke surrounded by a handful of other inmates and going over to an area to speak to an individual through the glass.  (Doc. 257 at p. 41).  The video did not depict whether Mr. Milk was the individual on the other side of the glass or not.  Id.  Based on the totality of information law enforcement had received, they conducted a search of Mr. Janis's cell and Mr. Milk's cell to look for evidence of witness tampering or obstruction of justice.  Id. at p. 66.

An FBI Special Agent, who was not associated with the prosecution against Mr. Janis or Mr. Milk, was requested to assist with the search.  Id.  After documents were seized from both jail cells, that same Special Agent transported the boxes of documents to the FBI field office in Rapid City where they were either locked in a cabinet or secured with tamper tape.  Id. at p. 68.  The same FBI Special Agent conducted an initial review of the documents to

look for potential evidence of witness tampering or obstruction of justice.  Id. at

p. 69.

     Those identified documents (Ex. 2)[1] were then sent to Assistant United

States Attorney Jeff Clapper in Sioux Falls who was part of the assigned taint

team.  (Doc. 257 at p. 69-70).  AUSA Clapper reviewed those documents for any

privileged materials and, after his review, sent a letter stating he had not found

any privileged material in the identified documents and that they could be

disseminated to the prosecution team.  Id. at p. 71.  The remaining documents

from the seized materials, that were not identified as potential evidence, were

photocopied, put in banker's boxes, and locked in a cabinet in case there were

ever any questions as to what was taken from the jail cells.  The original

contents from the seizure from Mr. Milk's cell was then sealed and returned to

his legal counsel.  Id. at p. 14, 72.

     Mr. Milk filed the pending Motion to Suppress.  (Doc. 232).  In his

Motion, Mr. Milk argues the documents seized are protected by attorney-client

privilege and the work product doctrine.  Id.  See also (Doc. 263).  The

Government opposes the Motion.  (Docs. 238, 267).

---

[1] Exhibit 2 will be referenced by page numbers one through twenty-four of the document itself.
The court will not reference Exhibit 2 by the bates numbers or page numbers printed on
individual pages, as those numbers do not account for all of the pages in the exhibit.

## DISCUSSION

Mr. Milk's motion does not challenge the warrantless seizure of the documents from a Fourth Amendment[2] or Fifth Amendment[3] perspective. (Doc. 232). Rather, his Motion challenges the warrantless seizure of documents pursuant attorney-client privilege and the work product doctrine. Id. See also (Doc. 263).

### I.    Attorney-Client Privilege

"In the absence of a relevant federal rule, statute, or constitutional provision, federal common law governs questions of privilege in federal criminal proceedings." United States v. Yielding, 657 F.3d 688, 706–07 (8th Cir. 2011) (citing FED. R. EVID. 501; United States v. Espino, 317 F.3d 788, 795 (8th Cir.2003)). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The attorney-client privilege protects communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." United States v. Beckman, 787 F.3d 466, 482 (8th Cir. 2015). The one claiming attorney-client

---

[2] The court notes such an argument would likely fail on the merits. See Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Furthermore, the court notes that based on reports from Mr. O'Rourke that he was being intimidated into changing his testimony by Mr. Milk, a search of Mr. Milk's cell was proper. See id. at 529 ("Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries.").
[3] Again, the court notes such an argument would likely fail on the merits. See United States v. Hogan, 539 F.3d 916, 924 (8th Cir. 2008) (holding there was no violation of the Fifth Amendment where papers with incriminating statements were seized from Defendant's jail cell because Defendant "was not compelled to create the papers.").

privilege has the burden of establishing it.  Bouschor v. United States, 316
F.2d 451, 456 (8th Cir. 1963).

### a.  Letter to Mr. O'Rourke – Exhibit 1

It is unclear whether Mr. Milk is requesting suppression of the document
contained in Exhibit 1.  His original motion only requests suppression of "all
evidence seized from his jail cell[.]" (Doc. 232 at p. 1).  The letter in Exhibit 1
was not taken from Mr. Milk's jail cell, but rather, was given to law
enforcement from Mr. O'Rourke, who was the recipient of the letter.  However,
Mr. Milk's post-hearing brief specifically discusses Exhibit 1.  (Doc. 263 at p.
2).

The court will address Exhibit 1 on the merits for the purpose of
thoroughness.  Mr. Milk bears the burden of establishing attorney-client
privilege.  Bouschor, 316 F.2d at 456.  The evidence at the hearing clearly
establishes the letter was directed to Mr. O'Rourke, not Mr. Milk's legal
counsel.  Furthermore, Mr. Milk argues the author of the note is unknown, and
therefore, cannot meet his burden to demonstrate the letter was written by
himself and intended to serve as a communication to his legal counsel for the
purposes of obtaining legal advice.  (Doc. 263 at p. 2).  Accordingly, Mr. Milk
has failed to meet his burden to establish the document is protected by
attorney-client privilege.

### b.  Documents Found in Mr. Milk's Jail Cell – Exhibit 2

The court first notes that the Government makes the overarching
argument in opposition to the Motion to Suppress that Mr. Milk's charge in

Count 3 of the Second Superseding Indictment charges Mr. Milk with conduct that occurred between November 22, 2015, and July 5, 2017, *before* the search of Mr. Milk's cell. (Doc. 238 at p. 3). While this is a correct statement, the court is not persuaded by this argument. Just because the search occurred *after* the crime was alleged to have occurred, does not make it irrelevant. Contrary, the documents which could be used to support a charge of witness tampering are not dated, and it could therefore be argued they reference conduct that occurred within the time frame charged in the Second Superseding Indictment, even if they were not seized until two years later.

Even so, the court finds Mr. Milk has failed to meet his burden to establish any of the documents found in his jail cell are protected by attorney-client privilege. The court will address each document, in turn.

### i. List of "Snitches Against B-Man"

Page four of Exhibit 2 is a document titled "Snitches Against B-Man." (Ex. 2 at p. 4). Officers testified at the hearing that Brendon Janis is also known as "B-Man" or "B." (Doc. 257 at p. 16, 18). The court finds this testimony credible, particularly in light of the fact that letters were found in Mr. Janis's cell that were addressed accordingly. (Ex. 2 at 21). Mr. Milk introduced no evidence that this document is a communication "between a client and his attorney for the purpose of facilitating the rendering of legal services." See Beckman, 787 F.3d at 482. Rather, it is a list of individuals who were scheduled to testify against Mr. Janis. Accordingly, Mr. Milk has failed to

meet his burden to establish the document is protected by attorney-client privilege.

  ii. <u>Letter Addressed to "B" with Bottom Right Corner Torn Off</u>

   Page five appears to be a letter addressed to Mr. Janis from Mr. Milk. (Ex. 2 at p. 5). The letter is addressed to "B" and details an incident where the author explains the first time that he met "Cole B" he "beat him down in here." <u>Id.</u> Law enforcement believed the letter was addressed to Mr. Janis and authored by Mr. Milk based on similar handwriting to other letters Mr. Milk authored, the fact the letter was found in Mr. Milk's cell, and because Mr. Milk had an altercation at one point in the jail with Cole Brewer, like the content of the letter discusses. (Doc. 257 at p. 18). The court finds law enforcement's determination on this point credible.[4] In the letter, Mr. Milk details he told "Sam" what to say on the jury stand and if he would not comply that "s\*\*\* would get handled." <u>Id.</u> Law enforcement believed the reference to "Sam" to be Samuel O'Rourke based on Mr. O'Rourke's role in testifying in the Janis trial and his reports of intimidation. The court again finds this determination credible. The letter goes on to discuss other witnesses in the trial, some of which are characterized as "rats" and prompts Mr. Janis on points of trial strategy to discuss with Mr. Janis's attorney.

---

[4] <u>See</u> <u>United States v. Matlock</u>, 415 U.S. 164, 178 (1974) (holding the controlling burden of proof at suppression hearings is proof by a preponderance of the evidence). Furthermore, the court notes, to the extent Mr. Milk is claiming any of the letters were not authored by him or his attorney, Mr. Milk cannot credibly argue the documents are protected by attorney-client privilege.

It is clear that this letter was not meant to be a communication between Mr. Milk and his legal counsel for the purpose of facilitating the rending of legal services. Rather, the document appears to be a letter to Mr. Janis from Mr. Milk detailing witnesses who were set to testify against Mr. Janis, suggestions for Mr. Janis to prompt Mr. Janis's attorney with trial strategy, and an intent to tamper with witness testimony. Furthermore, the attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (internal quotation omitted). Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

### iii. Hand-Written Song Lyrics/Poem with the Signature "Chops" in the Bottom Right Corner.

Page six is a document signed by "Chops" which was collected by law enforcement to be used as a hand-writing comparison to the previous letter on page five of Exhibit 2. (Ex. 2 at p. 6). The document appears to be song lyrics or poetry authored by Mr. Milk. Id. Again, there is nothing within the document, nor was there any evidence presented at the hearing, indicating this document was intended to be a privileged communication to Mr. Milk's attorney for the purpose of rendering legal advice. Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

iv.  <u>Hand-Written Names of Witnesses Along with Summary of Witness Testimony</u>

Pages seven, eight, twelve, and thirteen are documents containing names of witnesses, summary of their testimony in the Janis trial, and Mr. Milk's opinions on credibility as well as his thoughts on how to rebut their testimony. <u>Id.</u> at p. 7-8, 12-13.  While this document offers insight into Mr. Milk's impressions and thoughts on how to combat witness testimony in his own trial, Mr. Milk has failed to provide any evidence that the document was intended to serve as a communication with Mr. Milk's attorney for the purposes of facilitating legal advice.  <u>Id.</u>

Similarly, while not dispositive, the court notes that the document is not addressed as a communication to Mr. Milk's attorney, nor is there any other indication that the document was intended to serve as such a communication. <u>See</u> <u>United States v. Presson</u>, No. 18-03128-01-CR-S-RK, 2020 WL 2992199, at *3 (W.D. Mo. June 4, 2020) (denying a motion to suppress pursuant to the Fourth, Fifth, and Sixth Amendment for papers written by Defendant and found on a table in the jail pod where "Defendant did not make any comment that the papers or envelope were to be mailed or provided to his attorney" and where "[n]one of the documents or envelope indicated that they were legal mail, that they were intended to be protected by the attorney-client privilege, or that they were otherwise privileged.").  Accordingly, Mr. Milk has failed to meet his burden to establish the documents are protected by attorney-client privilege.

### v. Hand-Written Note Titled "My Witnesses"

Pages nine and ten is a document titled "my witnesses" which includes specific names of people as well as what appears to be Mr. Milk's ideas for potential witnesses and the subject of their testimony. (Ex. 2 at p. 9-10). While the document appears to be Mr. Milk's notes for witness selection and trial strategy, Mr. Milk has failed to meet his burden to establish that the document was in any manner intended to serve as a communication to his counsel for the purposes of facilitating legal advice. Id. Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

### vi. Hand-Written Note Regarding High Speed Car Chase

Page eleven is a note discussing Mr. Milk's belief that the Federal Government should know a car registered in his name was involved in a high-speed chase and that the occupant driving the car got away, threw a gun, and fled on foot. Id. at p. 11. The note further discusses the car being impounded and states, "that's why we need to 'compel' to get that information!" Id. While appearing to be related to his case, the note on its face, nor the testimony at the hearing, provided any indication that this note was meant to serve as a communication to Mr. Milk's counsel for the purpose of facilitating legal advice. Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

vii.  Hand-Written Note Mentioning Alyssa Williams

Page fourteen is a note that discusses "bring[ing] up that even though Alyssa Williams made a statement, she's on the run." Id. at p. 14.  Similarly, the note contemplates if Judge Robert Mandel signed certain warrants and further discusses an apparent traffic stop with Ms. Williams.  Id.  Again, while appearing to be related to his case, the note on its face, nor the testimony at the hearing, provide any indication that this note was meant to serve as a communication to Mr. Milk's counsel for the purpose of facilitating legal advice. Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

viii.  Reference to "Skizz" and Bates #1728-1893

The entirety of page fifteen reads as follows: "Skizz: Milk Bates # 1728-1894." Id. at p. 15.  Law enforcement testified that "Skizz" is a nickname for one of the cooperating witnesses.  (Doc. 257 at p. 26).  Although the reference to "Skizz" and to the bates numbers appears to be a reference to discovery from the case, the note on its face, nor the testimony at the hearing, provided any indication that this note was meant to serve as a communication to Mr. Milk's counsel for the purpose of facilitating legal advice.  Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

ix.  Lists of Words and Their Meanings

Pages sixteen and nineteen are copies of documents that appear to be Lakota words and their translations.  (Ex. 2 at p. 16, 19).  Law enforcement

testified that during their investigation, some of the letters Mr. Milk wrote requested inmates to return information and to write back in Lakota. (Doc. 257 at p. 26). There is no indication that these lists of translations were meant to serve as communications to Mr. Milk's counsel for the purpose of facilitating legal advice. Accordingly, Mr. Milk has failed to meet his burden to establish the documents are protected by attorney-client privilege.

x. List of Names

Page seventeen is a list with names on it as well as the words "exculpatory," "inculpatory," and "hearsay" in the top right corner. (Ex. 2 at p. 17). The document also contains the definitions for the words "admissible" and "inadmissible." Id. Although the note contains legal terms and names related to Mr. Milk's case, the note on its face, nor the testimony at the hearing, provided any indication that this note was meant to serve as a communication to Mr. Milk's counsel for the purpose of facilitating legal advice. Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

xi. Post-It Note with Name Written on It

Page eighteen is a photocopy of a post-it note that has the name "Jennifer Wiesser" on it. Id. at p. 18. There is no other information on the document. The note on its face, nor the testimony at the hearing, provided any indication that this note was meant to serve as a communication to Mr. Milk's counsel for the purpose of facilitating legal advice. Accordingly, Mr. Milk has

13

failed to meet his burden to establish the document is protected by attorney-client privilege.

### c. Documents Found in Mr. Janis's Jail Cell – Exhibit 2

It is unclear whether Mr. Milk is seeking suppression of the documents found in Mr. Janis's jail cell. Mr. Milk's original motion only requests suppression of "all evidence seized from his jail cell[.]" (Doc. 232 at p. 1). However, his post hearing brief requests suppression of Exhibit 2, which includes both documents from Mr. Milk's cell and Mr. Janis's cell. At the hearing, both parties introduced testimony concerning the documents seized from Mr. Janis's cell. Therefore, the court will address these documents on the merits for purposes of thoroughness. Even so, Mr. Milk has failed to meet his burden to establish any of the documents found in Mr. Janis's jail cell are protected by attorney-client privilege. The court will address each document, in turn.

### i. Hand-Written Note Addressed to "B Man"

Pages twenty-one and twenty-two of Exhibit 2 is a front and back letter addressed to "B Man." (Ex. 2 at p. 21-22). The note discusses the case, witnesses, and discusses getting "word to" potential witnesses that they "better not" take the stand. Id. at p. 22. The letter is signed with a "C" that appears to be similar to the "C" in "Chops" at the bottom of the document containing song lyrics/poetry. Compare id. at p. 6 with id. at p. 22. Law enforcement also testified the signature was the same as prior letters Mr. Milk sent, and

furthermore, the handwriting and content of the letter, led them to believe Mr. Milk had authored the letter.  (Doc. 257 at p. 38).

Like the letter addressed to "B" *supra* in Section I.a.ii, it is clear that this letter was not meant to be a communication between Mr. Milk and his legal counsel for the purpose of facilitating the rending of legal services.  Rather, the document appears to be a letter to Mr. Janis from Mr. Milk detailing witnesses who were set to testify against Mr. Janis and an intent to tamper with witness testimony.  Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

### ii.  List of Names with Times Written Next to Them

Page twenty-three is dated August 27th and 28th, 2019, and has a list of witnesses with time stamps next to each name.  (Ex. 2 at p. 23).  Based on the witnesses, dates, and time stamps, it appears to be a list of witnesses and the times they testified during the Brendon Janis trial.  Mr. Milk provided no evidence that this document was intended to be a communication with his counsel for the purposes of facilitating legal advice.  Contrary, at the hearing, Mr. Milk introduced evidence that law enforcement does not believe the document was authored by Mr. Milk.  (Doc. 257 at p. 39).  Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

### iii.  Hand-Written Note Mentioning "Green Lighting"

Page twenty-four is a handwritten note, that is not addressed to anyone, nor is it signed by anyone.  (Ex. 2 at p. 24).  The content of the note discusses

"greenlighting" and an intent to assault "snitches." Id.  Law enforcement testified that "green-lighting" is commonly known be mean "kill or assault." (Doc. 257 at p. 35).  As with the note discussed *supra* in Section I.b.ii, Mr. Milk provided no evidence that this document was intended to be a communication with his counsel for the purposes of facilitating legal advice.  Contrary, at the hearing, Mr. Milk introduced evidence that law enforcement does not believe the document was authored by Mr. Milk.  Id. at p. 39.  Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected by attorney-client privilege.

For the reasons stated *supra* in Sections I. a-c, this court respectfully recommends Mr. Milk's Motion to Suppress be denied on the grounds of attorney-client privilege.

## II.   Work Product Doctrine

The work product doctrine was first recognized by the Supreme Court in 1947 in Hickman v. Taylor, 329 U.S. 495 (1947)).  Although originally asserted as a bar to discovery in the context of civil litigation, the doctrine has been recognized as being even more vital in the criminal justice system.  United States v. Nobles, 422 U.S. 225, 238–39 (1975).  Although similar in some respects, the work product doctrine is "distinct from and broader than the attorney-client privilege."  In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotation omitted).

"At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and

16

prepare his client's case." <u>Nobles</u>, 422 U.S. at 238–39.  The doctrine has been expanded to protect not just the work of the attorney, but also the materials produced by agents for the attorney.  <u>Id.</u>  However, not all documents created by an attorney or agent are protected by the work product doctrine.  The doctrine only protects those documents which were created by the attorney or agent while "acting for his client in anticipation of litigation." <u>Id.</u> (quoting <u>Hickman</u>, 329 U.S. at 507).

There are two kinds of work product: (1) "ordinary work product, which includes raw factual information;" and (2) "opinion work product, which encompasses counsel's mental impressions, conclusions, opinions or legal theories." <u>In re Green Grand Jury Proceedings</u>, 492 F.3d at 980 (internal quotations omitted).  The Eighth Circuit Court of Appeals has recognized that "opinion work product enjoys substantially greater protection than ordinary work product." <u>Id.</u> (internal quotation omitted).  "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." <u>Kushner v. Buhta,</u> 322 F.R.D. 494, 498 (D. Minn. 2017) (quoting <u>Resolution Trust Corp. v. Dabney</u>, 73 F.3d 262, 266 (10th Cir. 1995)).

Federal Rule of Criminal Procedure 16 prohibits discovery of defense party work product as follows: "Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of . . . reports, memoranda, or other documents made by the defendant, or the defendant's attorney or

17

agent, during the case's investigation or defense[.]"  Fᴇᴅ. R. Cʀɪᴍ. P. 16(b)(2)(A).

"The party asserting work product protection has the burden of proving that

the requested materials are work product."  LeClere v. Mut. Tr. Life Ins. Co.,

No. C99-0061, 2000 WL 34027973, at *3 (N.D. Iowa June 14, 2000) (citing In

Re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 925 (8th Cir.1997); In

Re Grand Jury Proceedings (Malone), 655 F.2d 882 (8th Cir.1981)).

Mr. Milk asserts the documents seized are protected by the work product

doctrine.  The court notes first and foremost that nowhere in Mr. Milk's original

motion did he raise grounds of the work product doctrine.  (Doc. 232).  It was

not until his post-hearing supplemental brief that Mr. Milk raised the issue of

the work product doctrine, thereby depriving the Government a full opportunity

to present evidence on the issue at the suppression hearing.  (Doc. 263).

However, because the Government responded in its post-hearing brief to the

issue on the merits, and did not object to the introduction of the new issue, the

court will address the argument on the merits.

No evidence presented at the suppression hearing, nor does Exhibit 2 on

its face, indicate the documents seized from Mr. Milk's jail cell were created by

Mr. Milk's legal counsel or an agent employed to assist Mr. Milk's legal counsel.

It is true, however, that some of the documents appear to be written by Mr.

Milk himself and were clearly made in anticipation of his upcoming trial.  The

Government "submits the defendant's mental process were not conveyed on the

items seized."  (Doc. 267 at p. 3).  The court disagrees and finds the documents

on pages seven through fifteen of Exhibit 2 and page seventeen of Exhibit 2

include both raw factual information as well as Mr. Milk's mental impressions on witness credibility and trial strategy. The issue then becomes whether a criminal defendant can claim protection via the work product doctrine for documents and notes created, by himself, in anticipation of litigation? This court answers that question in the affirmative.

The work product doctrine was first recognized by the Supreme Court in Hickman v. Taylor, wherein the Court recognized the vitality of an attorney to work on behalf of a client in creating legal theories and trial strategies free from the scrutiny of their adversaries. Although originally adopted with the attorney's work product in mind, the doctrine has been expanded to protect materials not only materials prepared by the attorney, but also those materials prepared by agents for the attorney. The Supreme Court, in expanding the doctrine, recognized that "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." Id. at 238. Furthermore, the Federal Rules of Criminal Procedure specifically define protected work product as "reports, memoranda, or other documents made by *the defendant*, or the defendant's attorney or agent, during the case's investigation or defense[.]" FED. R. CRIM. P. 16(b)(2)(A) (emphasis added).

Another district court within the Eighth Circuit, the District Court for the District of Iowa, considered a similar issue in United States v. Johnson, 378 F. Supp. 2d 1041 (N.D. Iowa 2005). In Johnson, the defendant was awaiting trial

19

on capital charges.  Id. at 1043.  As part of preparations for the case, an agent

for the defendant's attorney, a mitigation specialist, created a chronology of

defendant's life.  Id.  The mitigation specialist provided a copy of that

chronology to the defendant who then made various hand-written annotations

on the chronology.  Id.  Defendant mailed the chronology with the hand-written

annotations to a third-party who was going to write a book about Defendant's

life.  Id. at 1044.  Jail personnel copied the mailings and provided copies of the

intercepted mail to a Special Agent who was a law enforcement officer involved

in the investigation of the charges against Defendant.  Id.  Defendant filed a

motion for return of privileged materials, citing to the work product doctrine.

Id.

The court in Johnson ultimately held that the chronology created by the

agent *as well as* the hand-written notations made by the defendant were

protected by the work product doctrine.

> There is no dispute in this case that [the mitigation specialist's]
> chronology is subject to work-product protection, unless
> that protection has been waived.  *See Nobles,* 422 U.S. at 237-38,
> 95 S.Ct. 2160 (defining work product as materials prepared by
> the defendant's attorney or the attorney's agent in anticipation of
> litigation).  Although the government suggests that [Defendant's]
> annotations to the chronology may not be subject to work-
> product protection, the court does not agree: Absent proof that the
> annotations were made for [the third party's] benefit only, such
> annotations appear to be "made by the defendant ... during the
> case's investigation or defense" to assist in the preparation of
> [Defendant's] "mitigation" case.  *See* FED. R. CRIM. P. 16(b)(2) (so
> defining work product); *see also Nobles,* 422 U.S. at 237-38, 95
> S.Ct. 2160 (work product includes materials prepared by
> the defendant's attorney or the attorney's agent in anticipation of
> litigation).  Therefore, the court concludes that the chronology and
> annotations thereon are subject to the work-product privilege,

unless that privilege has been waived by [Defendant's] disclosure of the chronology to [the third party].

Id. at 1046.  Ultimately, the Johnson court declined to find waiver, and granted the motion for return of privileged materials.  Id. at 1049.

The present case, like Johnson, involves the question of whether a criminal defendant's hand-written documents and notes can constitute protected material pursuant to the work product doctrine.  Like the court in Johnson, this court finds that such documents, created in anticipation of litigation, may be protected by the work product doctrine.

The Government further argues that Mr. Milk cannot claim work product doctrine as "a shield to witness tampering or obstruction of justice."  (Doc. 267 at p. 3).  The court agrees with the general proposition that attorney client privilege and work product doctrine cannot be used to shield future wrongdoings.  In re Green Grand Jury Proceedings, 492 at 980 (8th Cir. 2007).  However, the documents that the court has identified as having mental impressions and raw factual data in pages seven through fifteen and page seventeen of Exhibit 2, as discussed *infra*, do not indicate any future witness tampering.  While one could speculate that Mr. Milk may have taken notes on witness testimony from the Janis trial in order to obstruct justice in his own upcoming trial, no such evidence was established at the hearing.  It is also equally possible that Mr. Milk may have taken notes on witness testimony in order to formulate ideas for his own defense.

Furthermore, at the hearing, the Government repeatedly questioned witnesses whether the documents provided law enforcement with any new

information, provided any further insight into defense strategy, or whether law enforcement conducted any follow up based on the information contained in the documents.  Law enforcement consistently answered in the negative.  However, the court is wholly unconvinced by this argument.  It makes no difference for purposes of suppression whether the work product actually aided law enforcement or not in the prosecution of Mr. Milk.  Rather, the test is whether the documents were created by Mr. Milk's legal counsel, an agent for his legal counsel, or by himself, in anticipation of Mr. Milk's trial.

### a.  Letter to Mr. O'Rourke – Exhibit 1

To the extent, if any, Mr. Milk is claiming work product protection for Exhibit 1, he has failed to meet his burden.  As noted *supra* in Section I.a, Mr. Milk concedes that the author of the letter is unknown.  (Doc. 263 at p. 2).  Therefore, he cannot claim work product protection for the letter.

### b.  Documents Found in Mr. Milk's Jail Cell – Exhibit 2

The court finds that pages seven through fifteen and page seventeen of Exhibit 2 are properly suppressed pursuant to the work product doctrine.  The court will address each document, in turn.

#### i.  List of "Snitches Against B-Man"

Mr. Milk has failed to meet his burden to demonstrate how this document is protected work product.  (Ex. 2 at p. 4).  The document contains a list of individuals who were are classified as "snitches" for their role to testify against Mr. Janis.  Id.  Although there may well be overlap between those individuals and the individuals who will testify against Mr. Milk, it is Mr. Milk's

22

burden to demonstrate the document is work product.  No evidence presented at the hearing, nor the document on its face, supports such a finding.

### ii.  Letter Addressed to "B" with Bottom Right Corner Torn Off

While this letter appears to prompt Mr. Janis on points for *Mr. Janis's* trial strategy, Mr. Milk has failed to meet his burden that the letter constitutes his own work product for his own defense.  Id. at p. 5.  No testimony at the hearing, nor the content of the document, support a finding of protection via the work product doctrine.

### iii.  Hand-Written Song Lyrics/Poem with the Signature "Chops" in the Bottom Right Corner.

This document appears to contain song lyrics or poetry authored by Mr. Milk.  Id. at p. 6.  While the document may have been inspired by his period of incarceration, again, Mr. Milk has failed to meet his burden to establish the document is protected by the work product doctrine.

### iv.  Hand-Written Names of Witnesses Along with Summary of Witness Testimony

As alluded to *supra* in Section I.b.iv, pages seven, eight, twelve, and thirteen are documents that offer insight into Mr. Milk's impressions and thoughts on how to combat witness testimony in his own trial, witness credibility insights, and notes on impeachment.  Id. at p. 7-8, 12-13.  In addition to the document itself, Mr. Milk established through cross examination of law enforcement that the documents contain Mr. Milk's analysis and impressions on witnesses.  (Doc. 257 at p. 42).  The documents clearly contain both raw factual information as well as Mr. Milk's mental impressions.

See In re Green Grand Jury Proceedings, 492 F.3d at 98; FED. R. CRIM. P. 16(b)(2)(A).  Accordingly, this court finds Mr. Milk has met his burden to establish work product doctrine and respectfully recommends pages seven, eight, twelve, and thirteen of Exhibit 2 be suppressed.

### v.  Hand-Written Note Titled "My Witnesses"

As noted *supra* in Section I.b.v, pages nine and ten, titled "my witnesses," include specific names of people as well as what appears to be Mr. Milk's ideas for potential witnesses and the subject of their testimony.  (Ex. 2 at p. 9-10).  The document clearly includes raw factual data as well as Mr. Milk's mental impressions concerning witness selection and trial strategy.  Id. Accordingly, this court finds Mr. Milk has met his burden to establish work product doctrine and respectfully recommends pages nine and ten of Exhibit 2 be suppressed.

### vi.  Hand-Written Note Regarding High Speed Car Chase

Page eleven discusses the need to "compel" information as well as Mr. Milk's notes on what he believes the federal government should have known regarding a vehicle being in his name involved in a high speed chase in which the occupant driving got away, threw a gun, and fled the scene on foot before his car was impounded.  Id. at p. 11.  The document contains raw factual data as well as Mr. Milk's mental impressions as it relates to his upcoming trial.  Id. Accordingly, the court finds Mr. Milk has met his burden to establish work product doctrine and respectfully recommends page eleven of Exhibit 2 be suppressed.

vii.  Hand-Written Note Mentioning Alyssa Williams

The hand-written note on page fourteen contemplates which judge signed certain search warrants and discusses details about a vehicle stop in connection with the present case.  (Ex. 2 at p. 14; Doc. 257 at p. 25).  The note clearly references case related information as well as information that Mr. Milk wants to address in his case regarding Ms. Williams being "on the run."  (Ex. 2 at p. 14).  Accordingly, the court finds Mr. Milk has met his burden to establish work product doctrine and respectfully recommends page fourteen of Exhibit 2 be suppressed.

viii.  Reference to "Skizz" and Bates #1728-1893

Page fifteen appears to be a reference to discovery documents in relation to one of the cooperating witnesses.  Id. at p. 15.  See also (Doc. 257 at p. 256). The court believes that the issue of suppression on this document is a closer call than the others.  However, because: (1) law enforcement testified that "Skizz" is a cooperating witness; (2) the document on its face clearly references discovery documents provided in relation to Mr. Milk's trial; and (3) out of an abundance of caution for Mr. Milk's rights, the court finds he has met his burden.  See Nobles, 422 U.S. at 238 ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital.").  Accordingly, the court respectfully recommends page fifteen of Exhibit 2 be suppressed.

### ix.  Lists of Words and Their Meanings

There is no indication from the testimony at the hearing, nor on the face of the documents, that the Lakota words and their translations were made by Mr. Milk in preparation for his upcoming trial.  (Ex. 2 at p. 16, 19).  Mr. Milk has failed to meet his burden to establish these documents are protected by the work product doctrine.

### x.  List of Names

Page seventeen includes legal terminology as well as what appears to be potential witnesses.  Id. at p. 17.  While the note does not include a lot of information, it does appear to be related to Mr. Milk's pending trial.  Due to the limited testimony at the hearing on this document, the court again finds this document to be a closer call.  However, in light of the names and legal terminology on the document itself, and in the interest of protecting Mr. Milk's rights, the court finds he has met his burden.  See Nobles, 422 U.S. at 238.

The court notes that after one of the witness names there is a notation reading "change her statement."  (Ex. 2 at p. 17).  Neither party introduced any testimony regarding whether the statement is noting a future intent to tamper with witness testimony or whether it is simply a notation that the witness was not credible because she had changed her own statement to law enforcement.  The court notes this only for purposes of providing a complete analysis regarding the crime or fraud exception to the work product doctrine.  The Government has failed address this statement, let alone to meet their burden that such a statement is a reference to a future crime.  In re Green Grand Jury

26

Proceedings, 492 at 980 (8th Cir. 2007).  This court finds it more plausible that the notation was meant to read "*changed* her statement" in a reference to the witness's credibility.   See (Ex. 2 at p. 21) (emphasis added) (making a reference to the same witness and stating she had *changed* her statement to law enforcement).  Therefore, this court respectfully recommends page seventeen of Exhibit 2 be suppressed.

### xi.   Post-It Note with Name Written on It

Page eighteen is a photocopy of a post-it note with a single name, Jennifer Wiesser, on it.  Id. at p. 18.  While the name may have been noted by Mr. Milk as a potential witness, he has not met his burden to demonstrate the document is protected work product.  Mr. Milk introduced no evidence at the hearing concerning the post-it note with the hand-written name, nor does the document on its face give any indication the name was noted in connection with Mr. Milk's case.  Additionally, while not dispositive, the court has reviewed the other work product documents seized as part of Exhibit 2 where potential witnesses were identified, and Jennifer Wiesser is listed nowhere on those documents.  Therefore, while the document may have been related to Mr. Milk's case, the court is left with no information concerning the document.  Accordingly, Mr. Milk has failed to meet his burden to demonstrate the document was created in anticipation of litigation.

### c. Documents Found in Mr. Janis's Jail Cell – Exhibit 2

To the extent, if any, Mr. Milk is claiming work product protection for documents seized from Mr. Janis's cell, he has failed to meet his burden. The court will address each document, in turn.

#### i. Hand-Written Note Addressed to "B Man"

Mr. Milk has failed to meet his burden to demonstrate how the letter in pages twenty-one and twenty-two is protected by the work product doctrine. Id. at p. 21-22. While the letter discusses witnesses and case related content, the letter specifically discusses an intent to tamper with witnesses in the Janis trial. Id. Even if Mr. Milk could argue such a letter qualifies as work product, which this court finds it does not, such a document would still be discoverable pursuant to the crime or fraud exception because of the letter's blatant discussion of committing future witness tampering. See In re Green Grand Jury Proceedings, 492 at 980 (8th Cir. 2007) (holding the work product doctrine cannot be asserted "as to any documents generated in furtherance of [Defendant's] misconduct).

#### ii. List of Names with Times Written Next to Them

Mr. Milk has failed to meet his burden to establish that he, his attorney, or an agent of his attorney authored page twenty-three in anticipation of his upcoming litigation. (Ex. 2 at p. 23). Contrary, at the hearing, Mr. Milk introduced evidence that law enforcement does not believe the document was authored by Mr. Milk. (Doc. 257 at p. 39). Accordingly, Mr. Milk has failed to

meet his burden to establish the document is protected by the work product doctrine.

### iii.  Hand-Written Note Mentioning "Green Lighting"

Likewise, Mr. Milk Mr. Milk introduced evidence that law enforcement does not believe the document on page twenty-four was authored by Mr. Milk. (Ex. 2 at p. 24; Doc. 257 at p. 39).  Accordingly, Mr. Milk has failed to meet his burden to establish the document is protected the work product doctrine.

## CONCLUSION

Based on the foregoing, this court respectfully recommends Defendant's Motion to Suppress (Doc. 232) be granted in part and denied in part consistent with this Report and Recommendation, in that, pages seven through fifteen of Exhibit 2 and page seventeen of Exhibit 2 be suppressed on the basis of the work product doctrine.

To the extent Mr. Milk's motion is requesting dismissal of his underlying charges, Mr. Milk has provided no legal authority for dismissal apart from his arguments in favor of suppression, and therefore, this court respectfully recommends such a motion be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

29

Objections must be timely and specific in order to require *de novo* review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 14th day of August, 2020.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge