UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>          vs.<br><br>WICAHPE MILK,<br><br>                              Defendant. | CR. 16-50149-03-JLV<br><br><br>ORDER |

## INTRODUCTION

Pending before the court is defendant's motion to suppress.   (Docket 232).

The United States opposes defendant's motion.   (Dockets 238 & 267).

Defendant's motion was referred to Magistrate Judge Daneta Wollmann for a

report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's

April 1, 2018, standing order.   An evidentiary hearing was held.   (Dockets 250 &

257).   Magistrate Judge Wollmann issued a report and recommendations ("R&R").

(Docket 283).   The magistrate judge recommended the defendant's motion to

suppress be granted in part and denied in part.   Id. at pp. 1 & 29.   Both parties

timely filed objections to the R&R.   (Dockets 292 & 293).   For the reasons stated

below, the parties' objections are overruled and the R&R is adopted consistent with

this order.

## GOVERNMENT'S OBJECTION

The government's objection to the R&R is as follows: "The United States

objects to the magistrate judge's finding and conclusion that pages 7-15 and 17 of

Exhibit 2 constitute work product."   (Docket 292 at p. 1) (bold omitted).   The

government's submission makes additional arguments concerning the R&R, but

those are neither factual nor legal challenges but rather alternative arguments in

the event the court disagrees with the recommendations of the magistrate judge.

The government's arguments will be addressed if and where appropriate.

### DEFENDANT'S OBJECTION

The defendant's objection to the R&R is summarized as follows: Because of

the government's outrageous conduct and actual prejudice to the defendant,

dismissal of the indictment is the remedy.   (Docket 293 ¶¶ 7-9).[1]

### ANALYSIS

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files

written objections to the magistrate judge's proposed findings and

recommendations, the district court is required to "make a de novo determination

of those portions of the report or specified proposed findings or recommendations

to which objection is made."   Id.   The court may "accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge."

Id.   See also Fed. R. Crim. P. 59(b)(3).   The court completed a *de novo* review of

those portions of the R&R to which objections were filed.

The court completed a *de novo* review of the transcript of the suppression

hearing and the exhibits admitted at the hearing.   Neither party objected to the

_____

[1]The numbering of paragraph 5 on page 3 is an obvious typographical
error so the court will refer to that paragraph as paragraph 8 and the
subsequent paragraph will be renumbered as paragraph 9.   See Docket 293 at
pp. 2-3.

magistrate judge's statement of the facts developed during the suppression hearing.   (Docket 283 at pp. 2-4).   See Dockets 292 & 293.   Unless otherwise indicated, the court's findings of fact are consistent with the findings made by the magistrate judge.

                    WORK PRODUCT PRIVILEGE

         The R&R notes Mr. Milk did not raise work product privilege until his post-hearing brief.   (Docket 283 at p. 18) (referencing Docket 263).   While the government did not object to defendant's untimely assertion of new grounds for suppression, its post-hearing brief argued in opposition to the applicability of the work product privilege.   (Docket 267).   Like the magistrate judge, the court finds the government waived the untimeliness argument.   (Docket 283 at p. 18).

         The magistrate judge properly identified the two types of work product. "(1) ordinary work product, which includes raw factual information; and (2) opinion work product, which encompasses counsel's mental impressions, conclusions, opinions or legal theories."   (Docket 283 at p. 17) (citing In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotations omitted).   Based on the application of these factors, the magistrate judge found "the documents on pages seven through fifteen . . . and page seventeen of Exhibit 2 include both raw factual information as well as Mr. Milk's mental impressions on witness credibility and trial strategy."   Id. at pp. 18-19.   While the court appreciates the magistrate judge's effort to identify the pages of Exhibit 2 being addressed, for purposes of resolving the parties' objections, the court will

                                3

reference the challenged pages by their bates stamp number 2895-2903 and 2905.

The government's objection claims the defendant failed to sustain his burden of proof to show the documents constitute "the mental processes of the defense."   (Docket 292 at pp. 1-2) (citing United States v. Kuhnel, 2019 WL 6769417, at *3 (D. Minn. December 12, 2019)).

The government's objection addresses as a group pages 7 through 14, bates stamped 2895-2902.   "The information written on pages 7-14, presumably by the defendant though there is no such evidence in the record, conveys primarily names of persons who have provided statements to law enforcement and whose names have been conveyed in discovery."   (Docket 292 at p. 2).

The court disagrees with the government's argument.   Pages 7 and 8, as well as pages 12 and 13, bates stamped 2895-96 and 2900-01, are captioned either as "witness testimony" or "witnesses testifying" and contain Mr. Milk's perception as to how each witness may be challenged at trial.   The court agrees with the magistrate judge that these pages "contain both raw factual information as well as Mr. Milk's mental impressions."   (Docket 283 at pp. 23-24) (referencing In re Green Grand Jury Proceedings, 492 F.3d at 98; Fed. R. Crim. P. 16(b)(2)(A).   Mr. Milk's work was intended to assist his attorney in mounting a cross-examination of these witnesses at trial.

4

In the same vein, pages 9 and 10, bates stamped 2897-98, captioned "my witnesses" were intended to provide counsel with his "ideas for potential witnesses and the subject of their testimony."   (Docket 283 at p. 24) (referencing Exhibit 2 at pp. 9-10).   Whether these names may have been individuals disclosed in government discovery or developed independently by Mr. Milk, this list provides insight into Mr. Milk's perception of the defense's trial strategies.

Page 11, bates stamped 2899, presents a different issue.   The page lays out Mr. Milk's concern that while he may not have been involved in the high speed chase being described, his car was apparently impounded as the focus of a federal investigation.   Id.   While the government may have known Mr. Milk's car had been involved in a high speed chase and impounded, it is unlikely the government's discovery would have included the other raw data contained in the writing.   Mr. Milk's notation at the end of the page "[t]hat's why we need to 'compel' to get that information!" provides a mental impression of the defendant's concern in preparing for trial.   (Exhibit 2 at p. 11).

Page 14, bates stamped 2902, addresses a vehicle stop in which Mr. Milk and Ms. Williams were both apparently present and a subsequent search warrant related to the stop.   The document highlights Mr. Milk's desire to emphasize at his trial that Ms. Williams was "on the run," thus making her availability as a government witness suspect.   Id.   Also, after Mr. Milk was removed from the vehicle, Ms. Williams moved a red bag to the back seat where

5

he had been a passenger.   Id.   This note contains both raw factual data and Mr. Milk's anticipated trial strategy.   Id.   While Ms. Williams' name may have been provided to the defendant in discovery, there was no testimony at the suppression hearing that the government was aware of the other raw data in the document.

Page 15, bates stamped 2903, contains the notation "Skizz" who is a cooperating witness according to law enforcement.   (Docket 283 at p. 25).   The remaining notation on the page references by bates stamp numbering discovery documents provided by the government.   Id.   The magistrate judge concluded "out of an abundance of caution for Mr. Milk's rights," the defendant met his burden of proof this page constitutes work product.   Id.   Because the page impliedly ties government discovery to Skizz and the government has not shown the bates stamped discovery was not associated with or could not be used to cross-examine this cooperating witness, the court finds page 15 constitutes work product.

Page 17, bates stamped 2905, contains a list of fourteen names.   Exhibit 2 at p. 17).   While the page does not contain much information, it references a number of individuals who the court recognizes were defendants in previous drug cases.   Concerning the witness who according to the notation "change her statement," the government argues it provided the defense with "multiple statements by that witness."   (Docket 292 at p. 2).   While the government may acknowledge this witness changed her story throughout the course of several

statements, the notation is still the defendant's impression of how the witness may be attacked at trial.

In its conclusion, the government submits it "does not intend to rely on the information written in pages 7-15 and 17 of Exhibit 2 at trial at the present time.   However, actions by the defendant may change that course of action should he engage in witness tampering or other obstructive behavior making such reliance necessary."   Id.   Because the ultimate ruling of the court is to suppress the identified documents and their content, the government is cautioned that it must first approach the court out of the presence of the jury and secure a ruling from the court before attempting to use either the documents or the defendant's mental impressions as evidence at trial.

For the reasons stated above, the government's objection (Docket 292) is overruled.

<u>REMEDY</u>

The R&R concluded "Mr. Milk has provided no legal authority for dismissal apart from his arguments in favor of suppression, and therefore, this court respectfully recommends such a motion [to dismiss] be denied."   (Docket 283 at p. 29).   The defendant's objection opposes this recommendation asserting the government engaged in outrageous conduct and he has shown actual prejudice.   (Docket 293 ¶¶ 7-9).   For these reasons, Mr. Milk argues dismissal of the indictment is the only appropriate remedy.   Id.

7

In neither the defendant's brief in support of his motion to suppress nor his post-hearing brief does the defendant cite to any legal authority supporting his late claim that the government's violation of the work product privilege justifies dismissal of the indictment.   See Dockets 232 and 263.   "Federal courts have repeatedly held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise new arguments or issues before the district court that were not presented to the magistrate."   United States v. Simeon, 115 F. Supp. 3d 981, 996 (N.D. Iowa 2015) (references omitted).   "The purpose of the Federal Magistrate's Act is to relieve courts of unnecessary work. It would defeat this purpose if the district court was required to hear matters anew on issues never presented to the magistrate.   Parties must take before the magistrate, not only their best shot but all of their shots."   Id. at 996-97 (citing Borden v. Secretary of Health & Human Services, 836 F.2d 4, 6 (1st Cir. 1987) (internal quotation marks omitted).   "This concept is premised on the same basis as the rule that an appellate court will not consider arguments not raised below except in the most compelling circumstances.   Thus, [a] district court judge [may] properly refuse[] to consider an argument which could have been, but inexplicably was not, presented to the magistrate in the first instance[.]"   Id. at 997 (citing Borden, 836 F.2d at 6).   See also D.S.D. Crim. LR 47.1(C) ("[T]he movant must serve and file a brief containing the movant's legal arguments, the authorities in support thereof, and the Federal Rule of Criminal Procedure on which the movant relies.") (emphasis added).

On this basis alone, the court overrules the defendant's objection (Docket 293) to the R&R.   To avoid a future claim of ineffective assistance by the defendant, the court will address the defendant's objections to the R&R.

The defendant acknowledges that suppression of the evidence is an appropriate remedy unless "suppression . . . cannot remedy prejudice from the constitutional breach."   (Docket 293 at p. 3) (citing United States v. Marshank, 777 F. Supp. 1507, 1521-22 (N. D. Cal. 1991)).   Mr. Milk argues "[t]he use of privileged evidence in violation of the defendant's due process and Sixth Amendment rights would compel the dismissal of the indictment."   Id. at p. 3 (referencing United States v. Pelletier, 898 F.2d 297, 303 (2d Cir. 1990)).   "[W]here no other remedy [is] sufficient," the defendant argues "[d]ismissal of an indictment has been held to be an appropriate remedy[.]"   Id.

Mr. Milk alternatively argues dismissal of an indictment is appropriate "when fundamental fairness or outrageous government conduct is shown."   Id. (referencing United States v. Russell, 411 U.S. 423, 432 (1973); United States v. Lard, 734 F.2d 1290, 1296-97 (8th Cir. 1984)).   He acknowledges that "[w]hen the government conduct outside the indictment process interferes with a constitutionally protected right, prejudice must be shown to warrant dismissal of the indictment."   Id. (referencing United States v. Morrison, 449 U.S. 361, 364-366 (1981)).

The defendant submits "the government has reviewed the work product produced by the defendant . . . including [names of] witnesses, comments by the defendant on those witnesses his opinions, and points to be raised with such

9

witnesses." Id. at pp. 3-4.   This information he contends "cannot be erased from

[the prosecutor's] mind." Id. at p. 4.   "Suppression of the evidence is not . . .

appropriate" in the defendant's view because "the government knows what it

knows about defendant's case and that knowledge cannot be erased or blotted out

to insure defendant of a fair trial." Id.   For these reasons, Mr. Milk asks that the

recommendation of the magistrate judge to suppress the evidence be rejected and

that the court order dismissal of the indictment.   Id.

A brief review of Russell is useful to understand the nature of the law

enforcement conduct necessary to justify dismissal of an indictment.

> [I]n drug-related offenses law enforcement personnel have turned to
> one of the only practicable means of detection: the infiltration of
> drug rings and a limited participation in their unlawful present
> practices.   Such infiltration is a recognized and permissible means
> of investigation; if that be so, then the supply of some item of value
> that the drug ring requires must, as a general rule, also be
> permissible.   For an agent will not be taken into the confidence of
> the illegal entrepreneurs unless he has something of value to offer
> them.

Russell, 411 U.S. at 432.   "Law enforcement tactics such as this can hardly be

said to violate 'fundamental fairness' or 'shocking to the universal sense of

justice,' " Id. (citing Kinsella v. United States ex rel. Singleton, 361 U.S. 234,

246 (1960)).   "The law enforcement conduct here stops far short of violating

that 'fundamental fairness, shocking to the universal sense of justice,'

mandated by the Due Process Clause of the Fifth Amendment." Id. (citing

Kinsella, 361 U.S. at 246).

"[T]he defense of outrageous government conduct" is reserved for the "cases involving 'the most intolerable government conduct.' . . . Government conduct which is 'so outrageous and shocking that it exceed[s] the bounds of fundamental fairness,' may violate the Due Process clause and bar a subsequent prosecution."   United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (internal quotation marks and citations omitted).   "The level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.' "   Id. (internal citation omitted).

Defendant's reliance on Marshank, Pelletier and Lard is misplaced.   In Marshank, Ronald Minkin, the attorney for two cooperating defendants, provided information to the government leading to the indictment of another one of his clients.   Attorney Minkin then encouraged that client to cooperate with the government in order to secure an indictment against Marshank, with whom Minkin also had an ongoing attorney-client relationship.   Granting Marshank's motion to dismiss the indictment based on a due process violation for outrageous preindictment conduct, the district court distinguished between passive tolerance and active encouragement of impropriety:

> [T]he government actively collaborated with Ron Minkin to build a case against the defendant, showing a complete lack of respect for the constitutional rights of the defendant and Minkin's other clients and an utter disregard for the government's ethical obligations. . . . [T]he agents and the prosecutor here *never* warned Minkin not to engage in unethical behavior and in fact facilitated that behavior by hiding it from the defendant. Moreover, the government colluded with Minkin to obtain an indictment against the defendant, to arrest

11

the defendant, to ensure that Minkin would represent the defendant despite his obvious conflict of interest, and to guarantee the defendant's cooperation with the government.

Marshank, 777 F. Supp. at 1524 (emphasis in original).   The facts in Marshank exceed the boundaries of fundamental fairness, facts not comparable to the present case.

In Pelletier, the government used the defendant's immunized grand jury testimony to secure an indictment on another charge against the defendant. Pelletier, 898 F.2d at 303.   The government then used that same immunized testimony to convict the defendant at trial.   Id.   The appellate court instructed the district court to determine whether the immunized testimony "was so minimal or of such inconsequential nature in light of the other evidence before the grand jury as to constitute harmless error[.]"   Id.   "If satisfied that no tainted testimony was presented to the grand jury . . . or that any error was harmless, the district court need not dismiss the indictment and should proceed with the new trial.   Upon any new trial, the government may use only that evidence the district court finds to have been derived from legitimate sources wholly independent of the . . . immunized testimony."   Id. at 303-04.

In the present case, the court will not let the government use any of the information expressed in the relevant documents.   The government, like in Pelletier, will be required to show the evidence it seeks to use against the defendant was derived as "legitimate sources wholly independent of the" suppressed documents.   Id. at 304.

12

In <u>Lard</u>, "Agent Anderson's overinvolvement in conceiving and contriving the crimes here approached being "so outrageous that due process principles should bar the government from invoking judicial processes to obtain a conviction." <u>Lard</u>, 734 F.2d at 1296 (citing <u>Russell</u>, 411 U.S. at 431-32). "Anderson's conduct was not aimed at facilitating discovery or suppression of ongoing illicit dealings in unregistered firearms.   Rather, it was aimed at creating new crimes for the sake of bringing criminal charges against Lard, who, before being induced, was lawfully and peacefully minding his own affairs." <u>Id.</u> at 1297.   "Concepts of fundamental fairness preclude us from putting our imprimatur on law enforcement overreaching conduct designed to instigate a criminal act by persons otherwise innocent in order to lure them to its commission and to punish them." <u>Id.</u> (citing <u>Russell</u>, 411 U.S. at 428-29; internal quotation marks omitted).

Unlike Agent Anderson in <u>Lard</u>, law enforcement in Mr. Milk's case were appropriately investigating potential witness tampering and intimidation. Simply because the taint team attorney may have overlooked potential work product privilege documents does not rise to the level of misconduct found to be reprehensible in <u>Lard</u>.

"Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." <u>Morrison</u>, 449 U.S. at 364.   "[W]hen before trial but after the

13

institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted." Id. at 365. "In choosing a remedy, . . . the remedy imposed for a rights violation must be commensurate in scope with the violation and must recognize not only the defendant's rights, but also the public's interest in pursuing convictions." United States v. Woods, No. 18-3057, No. 18-3058, 2020 WL 6110621, at *9 (8th Cir. October 16, 2020) (referencing United States v. Blue, 384 U.S. 251, 255 (1966) (holding in the context of a presumed violation of the right against self-incrimination that the proper remedy would be the exclusion of evidence rather than the barring of prosecution because "numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether," and that "[s]o drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book")).

The government's conduct in this case was neither ill-conceived nor outrageous. It must be remembered Mr. Milk has neither a Fourth Amendment nor a Fifth Amendment right in the materials he possessed in his jail cell. See Docket 283 at p. 5 n.2 & n.3. It was proper for the agents to enter Mr. Milk's

14

jail cell to determine if he was engaged in witness tampering or making threats against witnesses in either the trial of Brandon Janis or his own trial.

It was appropriate for the government to establish a taint team which separated the investigative agents and prosecutor from the review and safe-keeping of the documents seized from Mr. Milk's cell.   See id. at p. 4.   Once the Assistant United States Attorney ("AUSA") completed his analysis, he authorized the documents not protected by the attorney-client privilege to be released to the investigative agents.   Id.   The AUSA directed the remainder of the documents removed from Mr. Milk's jail cell to be photographed and maintained in a secure location by a non-investigation related FBI agent.   Id. Once this process was completed the original documents were sealed and returned to defendant's attorney.   Id.

The documents under lock and key will be unavailable to the investigative agents and the prosecution.   It makes little sense to believe the non-investigative FBI agent would risk his professional career by violating his obligations as a member of the taint team.   Woods, 2020 WL 6110621, at *3.

The defendant identifies no authority where activities of this nature rose to the level of outrageous conduct and warranted dismissal of an indictment. To the contrary, the court finds the actions of the investigative agents, the prosecutor and the taint team in this case "demonstrate[] that the government was scrupulous in its effort to avoid procuring confidential defense strategy." United States v. Voigt, 89 F.3d 1050, 1071 (3d Cir. 1996).   The conduct in this

case "stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment."   Russell, 411 U.S. at 432 (internal citation omitted).   These "[l]aw enforcement tactics . . . can hardly be said to violate 'fundamental fairness' or 'shocking to the universal sense of justice.' "   Id. (internal citation omitted).   Mr. Milk fails to clear the high bar required for a due process violation and the government's conduct in this case does not "shock the conscience of the court."   Hunt, 171 F.3d at 1195.

While Mr. Milk makes generalized assertions of actual prejudice, he fails to present evidence to counter the government agents' testimony that names of the witnesses and related evidence were known to the government and actually presented to the defendant through pretrial discovery.   Mr. Milk "has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of [his] counsel to provide adequate representation in these criminal proceedings.   There is no effect of a constitutional dimension which needs to be purged to make certain that [defendant] has been effectively represented and not unfairly convicted."   Morrison, 449 U.S. at 366.   Suppression of the evidence, that is, pages 7-15 and 17 of Exhibit 2, bates 2895-2903 and 2905, satisfies the goal of protecting the defendant's work product from use by the government at trial.

Defendant's objection (Docket 293) is overruled.

16

**ORDER**

Based on the above analysis, it is

ORDERED that government's objection (Docket 292) is overruled

IT IS FURTHER ORDERED that defendant's objection (Docket 293) is overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 283) is adopted.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 232) is granted in part and denied in part consistent with this order and the report and recommendation.

IT IS FURTHER ORDERED that a scheduling order shall be issued forthwith.

Dated October 23, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE